**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Belinda Martin, his parent, on behalf of Jarell Martin, a minor,

Plaintiff,

v.

Hopkins School District; City of Minnetonka Police Department; Linda Hibbard, individual; Ronald Armstrong, individual; Sarah Shafer, individual; S.S., a minor; C.C., a minor; J.Z., a minor; and Michael Kremer, Superintendent

Defendants.

**ORDER**
Civil No. 01-2124 (MJD/SRN)

---

**IT IS HEREBY ORDERED** that:

On Friday, September 6, 2002, oral arguments were heard on this matter. Based on Plaintiff's counsel's conduct in court, as illustrated in the attached transcript, oral argument by counsel was not heard by the Court.

The Court has taken the motions under advisement.

Dated: September 9, 2002

Michael J. Davis
United States District Judge

FILED 9-9-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Belinda Martin, a parent, on behalf of J.M., a minor,**

**Plaintiff,**

**v.**

**Hopkins School District; City of Minnetonka Police Department; Linda Hibbard, individual; Ronald Armstrong, individual; Sarah Shafer, individual; S.S., a minor; C.K., a minor; and J.Z., a minor.**

**Defendants.**

**Civil No. 01-2124 (MJD/SRN)**

**ORDER**

---

Jennie Brown, Esq., on behalf of Plaintiff.

Karen A. Janisch, Esq., Kimberly H. Boyd, Esq., Paul S. Hopewell, Esq., and Kafi Cohn, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on March 7, 2002, on Defendants' Motion for Protective Order Governing Private Data (Doc. No. 13) and Plaintiff's Motion to Amend the Complaint (Doc. No. 11).[1]

This Order addresses those motions.

## I. DEFENDANTS' MOTION FOR PROTECTIVE ORDER

### A. Background.

[1]At the March 7, 2002 hearing, the Court granted Plaintiff's motion. To the extent that this Order addresses that motion, it seeks only to memorialize the ruling previously made from the bench.

FILED APR 29 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ______
DEPUTY CLERK ______

In the present case, the Complaint includes claims for malicious prosecution, fraud, and violations of federal and state law, resulting from Plaintiff's treatment while a student at Hopkins North Junior High School. The claims concern other students' behavior, as well as that of school officials.

**B. Discussion.**

The Minnesota Government Data Practices Act (MGDPA) defines educational data, with the exception of directory information, as private data, and limits its disclosure. Minn. Stat. § 13.32, subd. 1. The Family Educational Rights and Privacy Act (FERPA) contains a similar provision. 20 U.S.C. § 1232g. Both statutes permit disclosure of educational data pursuant to a judicial order. Minn. Stat. § 13.32, subd. 3(b); 20 U.S.C. § 1232g(b)(2)(B). The MGDPA also defines personnel data as private data, but permits its disclosure pursuant to a court order. Minn. Stat. § 13.43, subds. 1 & 4.

The Federal Rules of Civil Procedure provide for protective orders as follows:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense . . .

Fed. R. Civ. P. 26(c).

The United States Supreme Court has repeatedly addressed the implications of protective orders for the First Amendment. It has generally stated,

> It is, of course, clear that information obtained through civil discovery authorized by modern rules of civil procedure would

> rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court. In this case, as petitioners argue, there certainly is a public interest in knowing more about respondents. This interest may well include most--and possibly all--of what has been discovered as a result of the court's order under Rule 26(b)(1). It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery. For even though the broad sweep of the First Amendment seems to prohibit all restraints on free expression, this Court has observed that "[f]reedom of speech ... does not comprehend the right to speak on any subject at any time."

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31 (1984) quoting American Communications Assn. v. Douds, 339 U.S. 382, 394-395 (1950).

The Eighth Circuit has also addressed this issue, stating,

> Although the federal rules permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. It is clear from experience that pretrial discovery by depositions ... has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." Because of liberal discovery and the potential for abuse, the federal rules "confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required."

Miscellaneous Docket, Matter No. 1 v. Miscellaneous Docket, Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (internal citations omitted) quoting Seattle Times, 467 U.S. 20, at 34-36.

Defendant Hopkins School District (the District) requests that the Court issue an Order allowing it to use and disclose otherwise private data concerning Plaintiff and Defendants, to the Court and to the other parties in the present suit. Specifically, the District requests an Order allowing: (1) disclosure of otherwise protected data as necessary to comply with written discovery requests or deposition testimony; (2) disclosure of private data in relation to motion

procedure and supporting evidence; and (3) all the parties to share the private data with experts or other persons directly connected to this litigation.

In addition, the District, individual school employees, and minor student Defendants request that the Court issue a protective order: (1) protecting the identities of the minor students; (2) requiring the filing of all motions, memoranda, or supporting documents containing protected private data about the children to be filed with the Court under seal; (3) prohibiting the parties in this litigation from disclosing the private student or employee data outside of this litigation; and (4) prohibiting any party from using the data for any purpose other than actions in this litigation.

With respect to the MGDPA and FERPA, the District explains that both statutes designate educational data as "private" and limit its disclosure. Although there are provisions within each act permitting the disclosure of some information without a court order, the District explains that these provisions "do not necessarily allow the disclosure of student information in this case." Because each act permits disclosure pursuant to a court order, the District accordingly requests that the Court issue such an order.

The District further explains that "this litigation may implicate data about Linda Hibbard and/or Sarah Shafer that is designated as private data under the MGDPA." Because the MGDPA also allows disclosure of private personnel data pursuant to a court order, the District accordingly requests that the Court issue such an order.

With respect to the protective order, Defendants explain that this is necessary in order to protect "the legitimate privacy interests of the minor defendants and public employees." Defendants state that much of the information at issue in this case was provided by students at the request of school officials. Defendants argue that "these students should not be penalized for

cooperating with school officials, nor should they be subject to any potential embarrassment or harassment by release of their names and student data outside of this litigation." Defendants further argue that there would be a chilling effect on student cooperation if it led to negative press or otherwise became "public fodder." Finally, Defendants state that they are not seeking to limit Plaintiff's access to or use of discovery documents. Hence, there would be no hardship to Plaintiff by ordering the confidentiality of the students' identities and related discovery documents.

Plaintiff responds that the proposed protective order would be a prior restraint. Plaintiff asserts that "there is no known or expressed right of the litigants that a protective order needs to protect." Further, Plaintiff states that Defendants have not produced any case law supporting their motion. Plaintiff concludes that good cause is lacking, and the proposed protective order would violate the First Amendment.

Plaintiff emphasizes that Minnesota juvenile courts do not protect the names of parties. More particularly, when Plaintiff was subjected to juvenile proceedings over some of the same incidents at issue in the present case, the District took no steps to protect the confidentiality of Plaintiff's identity. Therefore, according to Plaintiff, it would be inconsistent, racist, and in violation of the Fourteenth Amendment to now treat Defendants otherwise.

Plaintiff adds that the Court is a public forum, and there is a presumption in favor of public access. Further, FERPA states that school directories are not covered, hence there is access to all the children's names. In addition, Plaintiff notes that FERPA does not protect deposition testimony and information contained in a complaint. Plaintiff's experience in the District has wide spread implications for the African American community. And, therefore, the

African American community has a legitimate interest in the current case. If the Court prevents disclosure of the Defendants' names, Plaintiff states that it will prevent the African American community from sharing information concerning its members.

Because Plaintiff has not chosen to have a jury trial, "[n]either plaintiffs nor defendants are affected by what a juror might read in the press." Plaintiff adds that the protective order would amount to a gag order, and such censorship in this case would cause greater harm than disclosure of the names would. Plaintiff cites numerous federal cases in which courts refused to seal entire court records, complaints, and other documents, because there was insufficient good cause to outweigh the legitimate public interest in the proceedings.

The Court grants Defendants' motion. As an initial matter, the Court wishes to clarify that this protective order is not a "gag order." Defendants are not seeking to prevent the disclosure of any otherwise public information. Thus, the present case can be distinguished from certain of the cases cited by Plaintiff, such as CBS, Inc. v. Young, 522 F.2d 234 (6th Cir. 1975) and Minneapolis Star & Tribune Co. v. Lee, 353 N.W.2d 213 (Minn. Ct. App. 1984).

In the present case, the Defendants have not previously permitted their identity to be revealed to the press. Therefore, the present case is also distinguishable from Oklahoma Publ'g Co. v. District Court, 430 U.S. 308 (1977), which Plaintiff cites in opposition to Defendants' motion. In Oklahoma Publ'g Co., the Court explained that,

> members of the press were in fact present at the hearing with the full knowledge of the presiding judge, the prosecutor, and the defense counsel. No objection was made to the presence of the press in the courtroom or to the photographing of the juvenile as he left the courthouse. There is no evidence that petitioner acquired the information unlawfully or even without the State's implicit approval.

430 U.S. at 311. In the present case, Defendants are seeking to protect legitimate privacy interests prior to any public disclosure. They are not arbitrarily attempting to prevent the press from disseminating information after initially permitting its disclosure. Courts in cases subsequent to Oklahoma Publ'g, have noted this distinction when upholding protective orders See e.g. Public Citizen Health Research Group v. Food & Drug Admin., 953 F.Supp. 400, 404 (D. D.C. 1996); In re a Minor, 595 N.E.2d 1052, 1057 (Ill. 1992).

Further, courts have deleted juveniles' names and identifying information in cases involving much more public behavior than that in the present case. See United States. V. Three Juveniles, 862 F.Supp. 651 (D. Mass. 1994). In Three Juveniles, the court balanced the competing forces of the First Amendment and common law presumptions of public access to trials on one side, against the Federal Juvenile Delinquency Act's mandate that proceedings remain closed on the other. The court permitted the disclosure of the "information" and court docket, but deleted all names and identifying information. It explained,

> First, the alleged civil rights violations were public in nature, involving, among other things, painting swastikas on synagogues and harassing African-American people in public places. The acts were designed to attract public attention, and they have. Accordingly, the public interest in the proceedings is higher than in other juvenile proceedings where the transgressions involved more private concerns. Second, these juveniles are currently aged 16, 16 and 18. While still entitled to the statutory protections of privacy, if found delinquent, they are old enough to benefit, in a rehabilitative way, from the public opprobrium attached to these charged acts. Third, as a practical matter, investigative reporting, including an interview with one of the juveniles, has already disclosed many details of the alleged transgressions. Further, many of the details have been disclosed in a related criminal prosecution of an adult. Fourth, although the First Amendment and common law presumption of openness do not attach to juvenile hearings,

> nonetheless the court gives great weight to the important interests they are designed to protect.

Id. at 658-59.

Unlike Three Juveniles, the present case does not involve juvenile behavior outside of school. Nor does it concern behavior designed to attract public attention. Therefore, it is reasonable to find that the MGDPA affords at least as much protection to Defendants in this case, as the Federal Juvenile Delinquency Act afforded to defendants under much more extreme circumstances.

The present case is also distinguishable from Minnesota cases in which schools unjustifiably restricted information. The proposed protective order in this case will not prevent Plaintiff's access to the information necessary to make a case. As a result, it is unlike In re Expulsion of E.J.W. from Independent School District No. 500, 632 N.W.2d 775, 780-81 (Minn. Ct. App. 2001) (holding that expelled student should have been provided access to names of student witnesses in order to adequately confront and cross-examine them at his expulsion hearing).

In addition, the information in question in E.J.W. was supplied to the school by the police, thus leading the court to explain that "[s]imply because the police shared their report with the district does not convert the information into education data subject to restrictions on disclosure." In the present case, the data was not supplied to the District by a separate governmental agency. Instead, the district compiled and maintained this data itself. Therefore, it qualifies as "private data" under the MGDPA and FERPA. The proposed protective order is a reasonable means by which to protect Defendants' legitimate privacy interests, while permitting

Plaintiff the full discovery necessary to fairly litigate this case.

## II. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Federal Rule of Civil Procedure 15(a) provides that a court may allow amendments to pleadings "when justice so requires." In interpreting this rule, the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claims on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). Neither delay nor dilatory motive are sufficient in themselves to deny a party leave to amend a pleading. The delay or dilatory motive must result in prejudice to the party opposing the motion. Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981). Even if the adverse party would suffer some prejudice if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if the motion were denied. Id.

The Eight Circuit has held that "[a]lthough amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-51 (8th Cir. 1996). In particular, leave to amend may be properly denied when the proposed amendment would be futile. See Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983). The Eighth Circuit has also held, however, that amendments should be denied on the merits of the claim only if the amendment asserts clearly

frivolous claims. Buder, 644 F.2d at 694. The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. Niagra of Wisconsin Paper Corp. v. Paper Industry Union Management Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

Plaintiff seeks to add the District Superintendent in his official capacity. Plaintiff also seeks to add claims for negligence and negligent supervision. Plaintiff explains that because the Superintendent is effectively the chief executive officer of the District, he is an appropriate Defendant. Moreover, Plaintiff states that in at least one other case, the court has held that a superintendent should be named.

Plaintiff acknowledges that in order to state a claim for negligent supervision, a plaintiff must assert that he or she has suffered physical harm. Therefore, Plaintiff offers to modify the Proposed Amended Complaint to include sleepless nights and certain other physical harm. With respect to the negligence claim, Plaintiff states the school unjustly prosecuted Plaintiff for incidents involving multiple students, while it chose not to discipline the other students in any way. Plaintiff explains that the school's behavior also caused damages in the form of physical and emotional distress.

Defendants respond that the proposed amendments should be denied as futile. Defendants state that adding the Superintendent in his official capacity adds nothing to this litigation. Defendants further argue that Plaintiff's proposed claims for negligence and negligent supervision claim are futile, because Plaintiff can not demonstrate a physical injury.

Alternatively, Defendants state that if the amendment is allowed, Plaintiff should identify which claims are being brought against which Defendants, and that Plaintiff should correct certain inaccuracies in the Proposed Amended Complaint.

The Court grants Plaintiff's motion. Plaintiff is instructed, however, to draft the Amended Complaint so that the pleadings are consistent with the legal requirements for each count. In addition, the Amended Complaint must clearly indicate which claims are directed at which Defendants.

**THEREFORE, IT IS HEREBY ORDERED that:**

(1) Defendants' Motion for Protective Order Governing Private Data (Doc. No. 13) is **GRANTED** consistent with this Order;

(2) Plaintiff's Motion to Amend the Complaint (Doc. No. 11) is **GRANTED** consistent with this Order.

Dated: April 29, 2002

Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| Belinda Martin, | ) | Civil 01-2124 MJD |
| Plaintiff, | ) | 9:00 a.m. o'clock |
| | ) | September 6, 2002 |
| vs. | ) | |
| Hopkins School District, et al., | ) | |
| Defendants. | ) | |

---

BEFORE THE HONORABLE MICHAEL J. DAVIS
UNITED STATES DISTRICT COURT JUDGE
(PARTIAL TRANSCRIPT OF MOTION)

APPEARANCES:

ON BEHALF OF THE PLAINTIFF: JENNIE BROWN, ESQ.

ON BEHALF OF THE DEFENDANT: KIMBERLY BOYD, ESQ.
PAUL HOPEWELL, ESQ.
KAFI COHN, ESQ.

COURT REPORTER:

BRENDA E. ANDERSON, RPR
300 South 4th Street
Suite 1005
Minneapolis, MN 55415
(612) 664-5104
E-mail - BAnder2400@aol.com

THE COURT: Ms. Brown.

MS. BROWN: Thank you, Your Honor.

THE COURT: Good morning.

MS. BROWN: Good morning. The defendant's motion for summary judgment pertains to immunity, Your Honor --

THE COURT: I'm sorry.

MS. BROWN: Defendant's motion for summary judgment pertains to immunity. It doesn't get into the factual basis of the civil rights claim. In fact, there is a stay of discovery that was granted by Magistrate Judge Nelson. So, right now we are in sort of a limbo as to completion of discovery. It has been stopped.

Defendant's counsel has stated here this morning that the school district relies on its administrative exercise and their discretion and their policy. However, when that policy is implemented in a racially discriminatory manner as has been done here, there is a violation of both the federal, state laws and the Constitution of the United States, and that's why this suit was brought. In fact, the suit was brought in Hennepin County District Court, and defendants, on their own discretion, removed the case to federal court, not the plaintiff. That's just an aside issue.

There was no informal conference for the discipline of J.M., and he has said I can call him Jerrell.

The --

THE COURT: What has the Court told you how to address him?

MS. BROWN: I don't know. Do you want me to use J.M.?

THE COURT: Yes. He's a minor.

MS. BROWN: I will go along with that, even though I think that's bias, and I will say that again. I think there was no need for the seal of the complaint on that matter --

THE COURT: I don't need you arguing my ruling on that.

MS. BROWN: I'm just setting forth my opinion, Your Honor.

THE COURT: I don't need to hear your opinion. Did you hear me? I said I want him referred to as J.M.

MS. BROWN: I am referring to him as J.M. --

THE COURT: And I don't want to hear your --

MS. BROWN: If you don't want me in your courtroom, I will leave you. I will leave if you don't want me here representing my client.

THE COURT: All right. I will take this matter under advisement..

MS. BROWN: And I will appeal to the Court of Appeals for your not allowing me to present my argument.

It's certainly a violation of law.

REPORTER'S CERTIFICATE

I, Brenda E. Anderson, Official Court Reporter, in the United States District Court for the District of Minnesota, do hereby certify that the foregoing transcript is a true and correct transcript of the proceedings in the above-entitled matter.

CERTIFIED: 9/9/2002

Brenda E. Anderson

Brenda E. Anderson, RPR