**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Plaintiff, his parent, on behalf of J.M., a minor,

Plaintiff.

Civil File No. 01-2124 MJD/SRN

**MEMORANDUM OPINION AND ORDER**

vs.

Hopkins School District[1], City of Minnetonka Police Department; Linda Hibbard, individual; Ronald Armstrong, individual; Sarah Shafer, Individual; S.S., a minor, C.K., a minor, J.Z., a minor, and Michael Kremer, Superintendent,

Defendants.

---

Jennie M. Brown, for and on behalf of Plaintiff.

Karen A. Janisch and Kimberly Hewitt Boyd, Rider, Bennett, Egan & Arundel, LLP, for and on behalf of Defendants Hopkins School District (Independent School District No. 270); Linda Hibbard, Sarah Shafer, and Michael Kremer.

Paul Hopewell, Johnson & Condon, for and on behalf of Defendant S.S.

---

For the reasons set forth below, Defendants' motions for summary judgment are granted.

**FACTUAL BACKGROUND**

Plaintiff filed suit on behalf of her son, J.M., an African-American ninth grade student at Hopkins North Junior High School, alleging violations of the Fourteenth Amendment Due Process and Equal Protection clauses under 42 U.S.C. § 1983, a conspiracy claim under 42 U.S.C. § 1985, various federal

[1] Independent School District No. 270

JAN 03 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 03 20
DEPUTY CLERK

statutes, the Minnesota Human Rights Act, Minn. Stat. § 363.03, and allegations of malicious prosecution, fraud and negligence. Plaintiff asserts these claims against Hopkins School District and its officials and students ("School Defendants") alleging unfair school suspension and reporting of conduct to the school police liaison officer. Plaintiff also asserts claims against the City of Minnetonka Police Department and Officer Ronald Armstrong ("Police Defendants") stemming from an alleged inadequate criminal investigation into complaints against her son.

*The Classroom Incident*

On either September 20 or 22, 2000, J.M. allegedly threatened a white 9th grade female student during class. According to the student, J.M. had stated that he did not like working with girls and yelled "you f- - - ing bitch, I'm going to kill you." The student proceeded to ignore J.M. who then stated, "You're just a stupid white bitch and you're pissing me off." When the student was waiting behind after class to report the incident to the teacher, Sarah Shafer ("Shafer"), J.M. allegedly stated, "F--- you, I need to leave last," and "you're going to regret it." The female student claims that the threats continued for two weeks following the incident.

On October 5, 2000, the student and Shafer provided statements to Officer Armstrong. Shafer's continuation report to Officer Armstrong confirmed that the student had reported the alleged statements to her on September 22, 2000. Shafer also reported that when she spoke to J.M. outside the classroom regarding his

behavior, J.M. told her, "Don't you realize I always turn my back to you? I thought you knew that was because I don't like girls." Moreover, the report indicates that on September 28, 2000, J.M. commented to another student, "If [Shafer] ever tells me what to do again I will kill her," and, on October 4, 2000, J.M. threatened another student stating, "If she talks to me again, I will kill her."

Officer Armstrong states that he attempted to talk with J.M. about these incidents, but that J.M. refused to discuss them with him. Officer Armstrong subsequently referred the case to the Hennepin County Juvenile Court for terroristic threats on a report received October 24, 2000. Pursuant to the school's request, charges were not filed for the incident with Shafer and the student.

According to Plaintiff and J.M., the above reported incidents never took place. Plaintiff states that she was not contacted, nor was J.M. summoned to the office regarding the incidents. She states that neither Officer Armstrong nor Hibbard ever attempted to discuss the threats with J.M. In addition, Plaintiff states that Officer Armstrong failed to interview any prospective witnesses to the classroom incident to confirm the reports. No punishment was administered through the school.

Plaintiff contends that Officer Armstrong should have investigated the threats further by interviewing potential witnesses, closing the gaps in the female student's testimony regarding the two weeks of continuous threats when she only specifically provides two dates, and contacting J.M. and Plaintiff for questioning.

*The Bomb Threat*

On September 26, 2000, Shafer overheard a student make a statement about blowing up the school during class. Shafer thought that the statement came from J.M. and accused him of making the threat.

According to Plaintiff, J.M. was wrongfully accused of the threat. J.M. states that the threat was actually communicated by two white students, J.Z. and C.K, who were working in a group with J.M. at the time. Following Shafer's accusations, J.M. implicated the other two boys. Despite the high level of noise in the classroom, Shafer remained convinced that J.M. had voiced the threat. All three boys were summoned to the principal's office for questioning by Hibbard. Based on her discussions with J.Z. and C.K., Hibbard believed their reports implicating J.M.

Hibbard reportedly accused J.M. of lying, stated that he looked like a criminal, and that "the majority rules" regarding her decision to believe J.Z. and C.K. Hibbard suspended J.M. for one day regarding the incident. According to J.M.'s affidavit, Hibbard refused to answer inquiries regarding what he considered a lack of investigation into his statements implicating the two other boys. Hibbard did promise, however, that the issue would not be pursued outside of the school. Plaintiff states that she spoke to Hibbard that day regarding the bomb threat incident and that Hibbard told her she believed the other two boys. (Parent Aff. 08/02/01, Janisch Aff., Ex. 6).

The school administration informed Officer Armstrong of J.M.'s alleged bomb threat. He referred the case to the Hennepin County Juvenile Court for terroristic threats. However, charges were never filed pursuant to the school's request.

Plaintiff alleges that Officer Armstrong failed to conduct an investigation into the threat, and failed to report the two white boys for the alleged threat to bomb the school despite J.M.'s statement implicating the boys. A subsequent affidavit provided by one of the boys contradicts his previous statements implicating J.M. and states that J.M. did not communicate the threat.

*The School Bus Incident*

On October 4, 2000, Assistant Principal, Linda Hibbard ("Hibbard") received a telephone call from the parent of a student who had witnessed an assault on the school bus. The student reported that J.M. had hit a girl on the bus and that the student had to pull J.M. off of her. The student identified J.M. and the alleged victim. Hibbard then contacted the girl's family regarding her condition. The next day, October 5, 2000, a bus driver reported the incident to the school officials stating that J.M. had punched the girl sitting behind him in the face because she was bothering him. The girl and her father also reported the incident. Hibbard met with J.M. J.M. informed Hibbard that the other student had provoked him, and that he had responded by hitting her and knocking out the lenses of her glasses. (Hibbard Aff., ¶16). Plaintiff does not contest the facts of this meeting.

On October 5, 2000, Hibbard reported to Officer Ronald Armstrong ("Officer Armstrong") that a student identified as J.M. had assaulted another student on a school bus. The girl, a white 7th grade special education student, then filed an assault report alleging that J.M. struck her seven times without provocation while under the belief that she was staring at him. Officer Armstrong investigated the assault. One witness' statement to Officer Armstrong corroborated the girl's version of events. The witness also displayed scratches allegedly caused by J.M. when she intervened. Another witness indicated that the girl had been patting J.M. on the head and refused to stop despite his requests to desist. In addition, the second witness reported that the female student had tried to strike her when she attempted to intervene. Officer Armstrong states in his affidavit that on October 5, 2000, he contacted J.M. for voluntary questioning, but J.M. refused to provide his version of the events.

Plaintiff prepared a voluntary police statement for her son on October 16, 2000. According to the statement, the girl had repeatedly scratched, pinched and hit J.M. prior to the assault. J.M.'s requests for assistance from the bus driver were ignored. Eventually, after the female student struck J.M. on the head, he struck back in self-defense.

Hibbard decided to suspend J.M. for three days. Hibbard states she did not suspend the female student for the school bus incident as she was not aware of any other witnesses who supported J.M.'s allegation that the student had engaged in conduct that rose to the same level or severity as J.M.'s reported conduct. Further,

given the girl's status as a special education student, Hibbard determined that her conduct could be addressed in her special education program. (Hibbard Aff., ¶ 16).

Subsequently, on or around October 11, 2000, Hibbard arranged a meeting with J.M., Plaintiff, a support specialist for the District, an Urban League Family Advocate, a PACER Advocate, and Dr. Patricia Schmidt, the Principal of North Junior High School, to discuss the bus incident. (Hibbard Aff. ¶20). This meeting was arranged to discuss the incident, J.M.'s suspension and alternatives for J.M. when he is faced with frustrating situations. (Id.).

On November 1, 2000, Officer Armstrong cited J.M. for 5th degree assault. The plaintiff alleges that Officer Armstrong never contacted her directly and only sent for J.M. to give him an envelope for her. Plaintiff states that Officer Armstrong did not attempt to question or advise J.M. regarding the incident and that Hibbard refused to allow J.M. to report his side of the story. Plaintiff argues that a 5th degree assault charge should have been filed against the female student based on Plaintiff's voluntary statement.

Defendants now seek summary judgment on all counts as set forth below.

**DISCUSSION:**

*Summary Judgment Standard of Review:*

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir.1995). However, the nonmoving party bears the burden of "presenting evidence sufficiently supporting disputed material facts that a reasonable jury could return a verdict in her favor." See Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1010 (8th Cir. 1992). Summary judgment is also appropriate when the plaintiff has failed to make a sufficient showing of the existence of an essential element of her case. Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Fed. R. Civ. P. 56(f)*

Plaintiff argues that consideration of summary judgment should be barred pursuant to Fed. R. Civ. P. 56(f) for lack of discovery. Lack of discovery alone, however, does not bar consideration of summary judgment. The Eighth Circuit has held:

> To fall under the protection of Rule 56, a party must articulate what additional discovery is necessary and how it is relevant to the opposition of the pending motion for summary judgment. We have noted that a party who invokes the protection of Rule 56(f) must do so in good faith by affirmatively demonstrating why [s]he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

Allen v. Bridgestone/Firestone, 81 F.3d 793, 797-98 (8th Cir. 1996)

The Plaintiff has not offered arguments that meet the pleading requirements required to postpone consideration of summary judgment under Rule 56(f). See id.

*Polygraph and Psychologist's Report*

Plaintiff offers evidence in the form of a polygraph test and a report from a psychologist as proof that J.M. was not lying regarding the nature of his involvement in the incidents forming this case. The defendants contest the admissibility of this evidence. Regardless, the Court notes that whether J.M. was in fact lying or telling the truth has no bearing on the School Defendants' and Officer Armstrong's evaluation of the contested situations as they confronted them. As such, the Court will not consider this evidence in its evaluation of Plaintiff's claims against the defendants.

*Service of Process*

The Court can dispose of the claims against Superintendent Kremer ("Kremer") immediately due to insufficient service of process. The School Defendants affirmatively allege in their Answer to the Amended Complaint that Plaintiff failed to personally serve Kremer as required by Fed. R. Civ. P. 4(c)(1). Formerly, U.S. Magistrate Judge Susan Richard Nelson granted Plaintiff leave to properly serve Kremer (Order dated Apr. 29, 2002, Janisch Aff., Ex. 1). Plaintiff has failed to do so, therefore, all claims regarding this defendant are dismissed.

Police Defendants also allege that Officer Armstrong was not properly served. The record indicates that the Court has received no proof of service nor

does the Plaintiff respond with evidence that Officer Armstrong was properly served. The Court may dismiss Plaintiff's claims against Officer Armstrong for insufficient service of process. However, the Court is also able to dispose of Plaintiff's claims against Defendants Kremer and Officer Armstrong on the merits as set forth below.

*Federal Claims*:

All of the federal claims in this suit allege state action. As such, the federal claims against the individual students are dismissed with prejudice.

As to the federal claims, the school officials and Officer Armstrong affirmatively allege that they should be granted qualified immunity as discussed below.

*Qualified Immunity:*

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985). In determining whether the state officials are entitled to qualified immunity, the Court must first consider whether the facts as alleged, taken in the light most favorable to the plaintiff, show that the defendant officials violated a federal statutory right. See id. at 201, 121 S. Ct. 2151. "[I]f no . .. right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. If the Plaintiff's allegations show a violation of such a right, then the court must inquire

whether the right was clearly established. See id.; Ware v. Morrison, 276 F.3d 385, 387 (8th Cir. 2002). For a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034. 97 L.Ed. 2d 523 (1987). In other words, "if the law did not put [the defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier v. Katz. 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001).

The Court will first examine whether Officer Armstrong and the School Defendants violated J.M.'s constitutional or federal statutory rights. Plaintiff's Amended Complaint appears to assert procedural and substantive due process claims against the School Defendants and equal protection violations against the School and Police Defendants.

*1. Procedural Due Process*

In order for Plaintiff to succeed on a procedural due process claim, she first must point to specific facts which, if proven, would establish that defendants deprived J.M. of a constitutionally protected property or liberty interest. Board of Regents v. Roth, 408 U.S. 564, 569-71, 92 S.Ct. 2701, 2704-06, 33 L.Ed.2d 548 (1972). Although Plaintiff argues that J.M. has a constitutionally protected right to ride the school bus, he in fact does not. Minnesota Statute §121A.59 states, "[t]ransportation by school bus is a privilege and not a right for an eligible student." Id. However, Plaintiff correctly argues that J.M. has both property and

liberty interests in his public school education protected by the Fourteenth Amendment. The U.S. Supreme Court has held that when a state offers its students a public school education, the student has a property and liberty interest in that education that cannot be removed without due process of law. Goss v. Lopez, 419 U.S. 565, 573-574 (1975).

Having determined that due process applies to J.M.'s school suspension, the Court must decide what process J.M. was due. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L. Ed.2d 484 (1972). The U.S. Supreme Court in Goss held that students who are suspended for ten days or less are entitled to only rudimentary procedural safeguards. Goss, 419 U.S. at 581, 95 S. Ct. at 739; Bystrom v. Fridley High Sch., 686 F. Supp. 1387, 1394 (D. Minn. 1987), aff'd, 855 F.2d 855 (8th Cir. 1988). In particular, regarding a suspension of ten days or less, due process requires that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. Goss, 419 U.S. at 581, 95 S.Ct. at 739.

As the Eighth Circuit in Bystrom stated:

> A three day suspension from school does not rise to the level of a penal sanction calling for the full panoply of procedural due process protections applicable to a criminal prosecution. More generally, due process principles have never assured a successful defense. Instead, a student facing a suspension of less than ten days is entitled only to state his or her view of the events precipitating the suspension for the purpose of avoiding unfair or mistaken findings of misconduct and arbitrary exclusion from school.

Bystrom, 686 F. Supp. at 1394. (citations and quotations omitted).

Here, the record indicates that J.M. was issued a one day suspension for the bomb threat incident and a three day suspension for the bus incident. Regarding the bomb threat incident, J.M. was brought to principal Hibbard's office where he was made aware of the claims against him and was able to respond to the accusations with his view of the events. In fact, J.M.'s affidavit indicates that during the conference with Hibbard, he explained that the other two boys were responsible for the threat. Likewise, in response to the bus incident, the record indicates that Hibbard called J.M. into her office and informed him about the allegations against him. At this meeting, J.M. told her he was defending himself. (Hibbard Aff., ¶16). Plaintiff does not contest that this meeting took place. Following the suspension, a meeting was held during which J.M. and Plaintiff had the opportunity to represent J.M.'s interests before the school officials. In light of these facts, the Court finds that J.M. was provided the constitutional due process required under Goss.

2. *Substantive Due Process*

In order for Plaintiff to prevail on a substantive due process claim against the School Defendants, she must establish that the "government's actions either shock the conscience or offend judicial notions of fairness and human dignity." Costello v. Mitchell Pub. Sch. Dist. 79, 266 F.3d 916, 921 (8th Cir. 2001) (quoting Young v. City of St. Charles, Mo., 244 F.3d 623, 628 (8th Cir. 2001). The Eighth

Circuit's threshold on this matter in relation to student discipline is extremely high. See, e.g., id. (alleged prolonged verbal harassment of a child by a teacher in front of classmates, including calling the student "retarded," "stupid" and "dumb" and striking student in the face, was not conscience shocking as a matter of law); London v. Directors of Dewitt Pub. Schs., 194 F.3d 873, 877 (8th Cir.1999)(dragging student across floor and banging student's head into a pole was not conscience shocking as a matter of law).

According to the Supreme Court, "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.720 (1985); Woodis v. Westark Community College, 160 f.3d 435, 438 (8th Cir. 1998). Here, Plaintiff's claims against the school district amount to one and three day suspensions based on the school officials' discretionary decisions regarding discipline. Further, the facts on record do not suggest that the Defendants' treatment of J.M. was racially motivated as alleged. Thus, the defendants' conduct toward J.M. does not constitute "conscience shocking" behavior. Accordingly, summary judgment is granted on this claim as it pertains to the school officials, Hopkins School District, and the juvenile individuals.

*3. Equal Protection*

Plaintiff's Amended Complaint asserts that the School Defendants and Police Defendants violated J.M.'s equal protection rights by disciplining, investigating, and reporting J.M. but not the white students involved in the incidents set forth

above. In particular, Plaintiff asserts the following regarding Schafer's handling of the alleged death and bomb threats: "Sarah Shafer seems to hear words said by J.M. but she does not recall exactly what was said. Sarah Shafer was focused on J.M. out of deeply seated race bias." (Pl.'s Mem. Opp'n Summ. J. Based on Immunity, at 5). Likewise, regarding Hibbard's decision to discipline J.M., Plaintiff states, "[i]n the implementation of the school's disciplinary policy, Ms. Hibbard told J.M. he looked like a criminal and the majority rules. Linda Hibbard also call (sic) him a liar before she even met with J.Z. and C.K., both white students. All statements are statements which show racial prejudice." (Id. at 7). Despite these allegations of racial bias, Plaintiff's pleadings do not provide specific facts suggesting that the school officials' treatment of J.M. was racially motivated. Rather, Plaintiff appears to rest her case on the fact that J.M. and the other students involved in the incidents were of different races. This alone, however, is insufficient evidence to suggest that race was a factor in any of the defendants' responses to the incidents.

Plaintiff also alleges an equal protection claim against Officer Armstrong for his decision to report and charge J.M. but not the white students associated with the incidents. Plaintiff's Amended Complaint states: "Officer Ronald Armstrong by either his failure to investigate or poor investigation of the allegation that J.M. had threatened to kill S.S. deprived J.M. of his federally protected constitutional rights under color of state law. Officer Ronald Armstrong's failure to investigate was based on the race and color of J.M." (Am.

Compl., ¶15). Plaintiff, however, offers insufficient evidentiary support for her claim that race was a motivating factor in Officer Armstrong's investigation of J.M., or his lack of investigation into J.M.'s accusations against other students.

Due to Plaintiff's failure to assert sufficient facts supporting her allegations of race discrimination, her claims under 42 U.S.C. §2000c, 42 U.S.C. §2000d, and Title VI of the Civil Rights Act of 1964 as alleged in the Amended Complaint, fail as a matter of law.

*Count VI: 42 U.S.C.A § 1985(3)*

Plaintiff alleges a § 1985(3) claim against the defendants for conspiracy to deprive J.M. of his constitutional rights. Under this section, Plaintiff must show (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) an overt act in furtherance of the object of the conspiracy; and (4) that J.M. was injured in his person or property or deprived of having and exercising any right or privilege of a US citizen. Bell v. Fowler, 99 F.3d 262, 270 (8th Cir. 1996); See Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).

A plaintiff must prove class-based "invidiously discriminatory animus" in order to sustain a claim under this section. Griffin v. Breckenridge, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 1798, 29 L.Ed. 2d 338 (1971); City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir.1993). Further, Plaintiff must allege with particularity and specifically demonstrate with material

facts that the defendants reached an agreement. City of Omaha, 883 F.2d at 652; Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988). In order to do this, Plaintiff must provide facts indicating that the defendants came to an understanding to violate the plaintiff's rights. Id. (citing Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989)).

As discussed above, the record contains insufficient evidence to suggest that the defendants' conduct was motivated by racially motivated. Therefore, Plaintiff is unable to prove invidiously discriminatory animus in support of her § 1985(3) conspiracy claim. Further, Plaintiff has not pointed to specific facts suggesting that defendants "reached an agreement" to violate J.M.'s rights. Plaintiff provides as evidence of her conspiracy claim that Officer Armstrong was contacted by Hibbing and Shafer, that he met with Hibbing, and that he did not meet with J.M.'s parent. (Pl.'s Mem. Opp'n Summ. J., at 11). The Court finds these facts insufficient to suggest an agreement to violate J.M.'s rights. Therefore, Plaintiff's conspiracy claim fails.

*Count VIII: 20 U.S.C. §1701 et. seq.: Equal Education*

Plaintiff alleges a claim under 20 U.S.C. §1701 et. seq. regarding equal education opportunities. Section 1703 of the statute provides in relevant part:

> No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—
>
> (a) the deliberate segregation by an educational agency of students on the basis of race, color, or national origin among or within schools;

> (b) the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system;
>
> (c) the assignment by an educational agency of a student to a school, other than the one closest to his or her place of residence within the school district in which he or she resides, if the assignment results in a greater degree of segregation of students on the basis of race, color. . .

Id.

Plaintiff has not provided factual support for applying this statute to the School Defendants under the circumstances of this case. Further, Plaintiff has not provided evidence of segregatory intent, which is a necessary element of a claim of unconstitutional segregation. See Morales v. Shannon, 516 F.2d 411 (5th Cir. 1975), cert. denied, 96 S.Ct. 566, 423 U.S. 1034, 46 L.Ed.2d 408; see also Northside Independent School Dist. of Bexar, et al. Counties Texas v. Texas Ed. Agency, 410 F. Supp. 360 (D.C. Tex. 1975).

Accordingly, Plaintiff's claims under this section fail as a matter of law.

*Count X: 20 U.S.C. §1401 et. seq.: Individuals with Disabilities Education Act*

Plaintiff asserts a special education claim against the School Defendants under the Individuals with Disabilities Education Act (IDEA).

Section 1401(3)(A) of the Act defines the term "child with a disability" as a child

> **(i)** with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

(ii) who, by reason thereof, needs special education and related services.

In her Amended Complaint, Plaintiff asserts that 20 U.S.C. §§1401-1461 applies to J.M. because, "J.M. has traditionally had difficulty in learning mathematics. He was consequentially placed in a special needs class taught by Sarah Shafer. Ms. Shafer's untrue statements and racial hostility against J.M. deprived him of an appropriate education." (Am. Compl., ¶20).

The School Defendants also note that in early 2001, the School District met with Plaintiff to discuss whether J.M. should be evaluated for a learning disability. The Plaintiff refused to consent to the evaluation (Def.'s Mem. Opp. Summ. J., at 29; Janisch Aff. Ex.1).

The Court notes that Plaintiff has provided insufficient evidence to support Plaintiff's claim that J.M.'s rights under the IDEA were violated on grounds of racial discrimination. Under these facts, however, J.M. may qualify as a pre-identified student with a disability pursuant to §1415(k)(8)(A) of the IDEA and therefore be due the procedural safeguards of the Act.

Nonetheless, Plaintiff must first exhaust all available state administrative review procedures before she can pursue this claim in federal court. Larson v. Int'l Falls Public Schs., 2002 WL 31108199 (D. Minn.); see, e.g, Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist. No., 198 F.3d 648 (8th Cir.1999); Moubry v. Indep. Sch. Dist. No. 696, 9 F.Supp.2d 1086 (D.Minn.1998). An exception to the exhaustion requirement applies only where a party can

demonstrate that exhaustion would be futile or inadequate to protect the party's rights. See Honig v. Doe, 108 S.Ct. 592 (1988); Covington v. Knox County Sch. System, 205 F.3d 912, 917 (6th Cir.2000).

Here, the record indicates that Plaintiff has made no attempt to address her IDEA claim through the administrative process. Nor has she argued that the administrative process would be inadequate or futile in protecting J.M.'s rights under the Act. Accordingly, this Court dismisses Plaintiff's claim under the IDEA for lack of subject matter jurisdiction.

***

Based on the above discussion of Plaintiff's federal claims, this Court finds that Plaintiff has failed to establish a constitutional or federal statutory violation of any kind by the Police Defendants or the School Defendants. Therefore, qualified immunity is appropriately granted to the school officials, the Hopkins School District, Officer Armstrong and the City of Minnetonka Police Department. Accordingly, Plaintiff's §1983, §1985 and other federal claims are dismissed as to these defendants.

*The Monell Claim*:

Because Plaintiff has failed to establish a prima facie case against the school officials and Officer Armstrong under §1983, summary judgment should be granted as to the Hopkins School District and the Minnetonka Police Department. In the alternative, however, summary judgment should be granted as to these two

defendants due to Plaintiff's failure to establish an official custom or policy of denying individuals their civil rights under §1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-691 (1978); Thelma D. v. Bd. of Educ. for St. Louis, 934 F.2d 929, 932 (8th Cir. 1991).

Plaintiff has not presented facts indicating that either of these defendants have an official policy or custom that would cause the alleged constitutional violations. Absent a showing of an official policy or custom of suspending students without due process of law or treating students differently based on their race, Plaintiff's §1983 claim against the School District and Police Department must fail.

*State Claims*:

*Official Immunity:*

Both the school officials and Officer Armstrong argue that they should be granted official immunity regarding Plaintiff's state law claims. Official immunity protects public officials whose duties call for the exercise of discretion from liability based on the exercise of that discretion unless the official is guilty of a willful or malicious wrong. Pletan v. Gaines, 494 N.W.2d 38, 40 (Minn. 1992) (citing Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988). Official immunity is intended to "insure that the threat of potential personal liability does not unduly inhibit the exercise of discretion required of public officials in the discharge of their duties." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). The Court determines that the duties of the school officials in disciplining and

reporting student conduct and Officer Armstrong's duties in investigating, charging and reporting criminal conduct are suitably discretionary (non-ministerial) for these defendants to qualify for official immunity, provided their conduct as alleged in the state claims was neither willful nor malicious. Dokman v. County of Hennepin, 637 N.W.2d 286, 296 (Minn.Ct.App. 2001). Further, the Court finds nothing in the Defendants' described conduct that suggests willful or malicious behavior. Therefore, the school officials and Officer Armstrong are protected by official immunity on all of the state law claims.[2]

*Count V: Minn. Stat. §363.03*

Plaintiff alleges a race discrimination claim under the Minnesota Human Rights Act ("MHRA") §363.03. Plaintiff argues that the School Defendants and Police Defendants violated this statute by treating J.M. differently because of his race. Plaintiff fails on this claim for the reasons explained under the Court's equal protection analysis. In addition, Plaintiff's claim against the minor students fails as a matter of law as Plaintiff has not pleaded facts indicating that the students' actions regarding J.M. were racially motivated or applicable to any of the provisions of this section.

---

[2] The school district and officials affirmatively assert that they are immune from the state law claims based on the doctrine of statutory discretionary immunity. The Court, having found that the defendants qualify for official immunity, will not address the statutory discretionary immunity claim.

*Count I: Malicious Prosecution:*

In her Amended Complaint, Plaintiff alleges a malicious prosecution claim against all defendants. In order to succeed on a malicious prosecution claim, the suit (1) must be brought without probable cause or a reasonable belief that the plaintiff would prevail on the merits; (2) must be instituted with malicious intent; and (3) must ultimately terminate in favor of defendant. Stead-Bowers v. Langley, 636 N.W.2d 34, 338 (Minn. Ct. App. 2001); Jordan v. Lamb, 392 N.W.2d 607, 609 (Minn. Ct. App. 1986). Minnesota courts disfavor malicious prosecution claims based on the policy goal of not discouraging criminal investigations. See Lundberg v. Scoggins, 335 N.W.2d 235, 236 (Minn. 1983) (citing Allen v. Osco Drug, Inc., 639, 642 (Minn. 1978)).

First, Plaintiff has failed to allege how this cause of action applies to the juvenile defendants. Stating that they "caused" J.M. to be prosecuted is insufficient to establish the elements of a malicious prosecution claim.

Plaintiff's malicious prosecution claim as applied to the School Defendants and Police Defendants fails for insufficient evidence indicating that the prosecution was brought with malicious intent or terminated in J.M.'s favor as required by the Stead-Bowers test. Rather, the record shows that J.M. entered "no plea" in exchange for probation on the 5th degree assault charge. (J.M. Aff. dated 04/07/02). Hennepin County and the school did not pursue charges regarding the other two incidents. These facts do not constitute termination in J.M.'s favor. "Where the proceeding has been terminated without regard to its merits by

agreement or settlement of the parties. . . there is no such termination as may be availed for the purpose of such an action." Survis v. A.Y. McDonald Mfg. Co., 28 N.W.2d 720, 727 (Minn. 1947) (citing RESTATEMENT OF TORTS §660).

In addition, the Court finds that given the written statements the school officials and students provided to Officer Armstrong, he had probable cause to issue J.M. a citation regarding the bus incident and to refer the other two incidents to the Hennepin County Juvenile Court.

Because Plaintiff has failed to establish a prima facie case of malicious prosecution, this claim fails as applied to all defendants.

*Count II: Fraud*

Plaintiff also asserts a fraud action against all defendants. The Federal Rules of Civil Procedure mandate that "[i]n all averments of fraud. . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9. The court in Bennett v. Berg, 685 F.2d 1053, (8th Cir. 1982), adhered to on reh'g, 710 F.2d 1361 (8th Cir. 1983) (en banc), cert. denied, 464 U.S. 1008 (1983) held that, "[c]ircumstances include such matters as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Id. at 1062. Plaintiff has already been directed by U.S. Magistrate Judge Susan R. Nelson to amend her complaint so that, "the pleadings are consistent with the legal requirements for each count." (Order dated Apr. 29, 2002; Janisch Aff., Ex. 1). Plaintiff has failed to do so. Having failed to meet this threshold pleading

requirement for a fraud action, Plaintiff's Count II of the Amended Complaint is accordingly dismissed with prejudice as applied to all defendants.

*Count III: Negligence; Count XI: Negligent Supervision*

Plaintiff asserts a negligence claim against all defendants. In order for Plaintiff's negligence claims to survive summary judgment she must show the following: (1) the existence of a specific legal duty of care to J.M., (2) breach of that duty by the defendants; (3) damages; and (4) causation. Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982).

In her Amended Complaint, Plaintiff pleads that all defendants, "owed a duty of reasonable care to J.M. to act such that J.M was not falsely prosecuted and/or suspended from school for acts he did not commit. . ." Plaintiff's assertion is not a showing of a "specific legal duty of care." See Vaughn v. Northwest Airlines, Inc. 558 N.W.2d 736, 742 (Minn. 1997). In the absence of a duty, no claim for negligence exists and therefore is dismissed. Rasmussen v. Prudential Ins. Co., 152 N.W.2d 35, 362 (Minn. 1967).

Plaintiff also asserts a negligent supervision claim against Hopkins School District, Superintendent Kremer, City of Minnetonka Police Department, and Officer Armstrong. In order to establish a negligent supervision claim, a plaintiff must prove that the employee's injurious conduct was foreseeable and that the employer failed to exercise ordinary care when supervising the employee. Oslin v. State, 543 N.W.2d 408, 415 (Minn.Ct.App.1996) (citations omitted), rev. denied (Minn. Apr. 1, 1996). Further, negligent supervision claims require proof of a

physical injury. Id. at 415; Bruchas v. Preventative Care, Inc., 553 N.W.2d 440, 443 (Minn. Ct. App. 1996). Here, Plaintiff has not presented evidence addressing the above criteria and only seeks emotional distress damages from the school district and police department. Plaintiff's evidence is insufficient to raise a factual issue regarding negligence or negligent supervision for trial and summary judgment is accordingly granted on these counts.

***

Due to Plaintiff's failure to plead facts indicating a willful or malicious wrong on the part of the school officials or Officer Armstrong, they are due official immunity on the state law claims. Appropriately, therefore, the state law claims against the Hopkins School District and the City of Minnetonka Police Department are dismissed under the doctrine of vicarious official immunity. Dokman v. County of Hennepin, 637 N.W.2d 286, 297 (Minn.Ct.App. 2001). Finally, summary judgment is granted as to the individual student defendants as Plaintiff has not established a prima facie case against them on any of the state law claims.

**CONCLUSION**:

The Court finds that Plaintiff's case does not set forth specific facts on any of the counts sufficient to raise a genuine issue of material fact for trial. For the reasons stated above, Defendants' motions for summary judgment are granted.

**IT IS HEREBY ORDERED THAT:**

1. Defendants Hopkins School District; Linda Hibbard; Sarah Shafer, S.S., C.K. and J.Z.'s Motion for Summary Judgment (Doc. No. 47) is **GRANTED.**
2. Defendants City of Minnetonka Police Department and Ronald Armstrong's Motion for Summary Judgment (Doc. No. 20) is **GRANTED.**
3. Plaintiff's Amended Complaint (Doc. No. 34) is **DISMISSED WITH PREJUDICE. LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: Jan. 3, 2003

Michael J. Davis

Michacl J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.